Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

Hearing Date: March 5, 2026
Time: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:
YAAKOV SPAETH,

                          Debtor.

---------------------------------------------------------x

Chapter 11
Case No. 25-23117 (SHL)

# NOTICE OF MOTION FOR ENTRY OF AN ORDER: (I) AUTHORIZING AND APPROVING TERMS AND CONDITIONS OF SALE OF DEBTOR'S INTEREST IN REAL PROPERTY, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) ESTABLISHING PUBLIC SALE AND NOTICE PROCEDURES; (III) FIXING DATE FOR SALE CONFIRMATION HEARING; AND (IV) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that, upon the annexed motion, dated February 16, 2026, and the exhibits annexed thereto, Yaakov Spaeth (the "Debtor"), by and through his undersigned counsel, will move this court at a videoconference hearing to be conducted via Zoom for Government before the Honorable Sean H. Lane, United States Bankruptcy Judge, on March 5, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard, for entry of an Order: (i) pursuant to 11 U.S.C. §§ 105 and 363, Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the sale of all of the Debtor's rights, title and interest in and to certain real property[1] located at 4 Beaver Pond Court, Stony Point, New York 10980 (Block 2, Lot 45, Section 14.03) to Yosef Krasnjanski

---

[1] The property is deeded to Stony Point Holdings LLC, which is a holding company of which the Debtor is the sole member.

for the sum of $1,275,000, subject to higher and/or better offers at a public auction sale (the "Public Sale"), free and clear of all liens, claims and encumbrances (collectively, "Liens"), with such Liens, if any, to attach to the proceeds of the sale in the amount and priority as they currently exist; (ii) approving certain terms, conditions and procedures for the Public Sale; (iii) approving the form, time and scope of the notice of the Public Sale; (iv) fixing the date for the hearing to confirm the results of the Public Sale; and (v) granting such other and further relief as may be just and proper (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall (i) be made in writing, (ii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, (iii) set forth the name of the objecting party, the nature and amount of any claim or interest held or asserted against the Debtor's estate or property, the basis for the objection and the specific grounds therefor, (iv) be filed with the Court together with proof of service thereof, and (v) be served in a manner so as to be received by Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq., not less than seven (7) days prior to the hearing date.

**PLEASE TAKE FURTHER NOTICE** that, to appear at the hearing on the Motion, all participants must register through the Court's *eCourt Appearances* program accessible on the Bankruptcy Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl at least 48 hours in advance of the hearing. *eCourt Appearances* registration is required by both attorneys and non-attorney participants. Once registered, *eCourt Appearances* will email the video link for the hearing 48 hours before the hearing date.

Dated: New York, New York
February 16, 2026

                         **PICK & ZABICKI LLP**
                         Counsel to the Debtor

By:   */s/Douglas J. Pick*
       Douglas J. Pick, Esq.
       369 Lexington Avenue, 12th Floor
       New York, New York 10017
       (212) 695-6000

Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:
YAAKOV SPAETH,   Chapter 11
   Case No. 25-23117 (SHL)
                    Debtor.
---------------------------------------------------------x

# DEBTOR'S MOTION FOR ENTRY OF AN ORDER: (I) AUTHORIZING AND APPROVING TERMS AND CONDITIONS OF SALE OF DEBTOR'S INTEREST IN REAL PROPERTY, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) ESTABLISHING PUBLIC SALE AND NOTICE PROCEDURES; (III) FIXING DATE FOR SALE CONFIRMATION HEARING; AND (IV) GRANTING RELATED RELIEF

TO:   THE HONORABLE SEAN H. LANE
      UNITED STATES BANKRUPTCY JUDGE

Yaakov Spaeth, the debtor and debtor-in-possession herein (the "Debtor"), by and through his undersigned counsel, as and for his motion (the "Motion") for entry of an Order: (i) pursuant to §§ 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and in substantially the same form as attached hereto as *Exhibit "A"* (the "Sale Procedures Order"), authorizing and approving the terms and conditions of sale (the "Terms of Sale" are attached to the Sale Procedures Order as *Exhibit "A"*), in certain real property located at 4 Beaver Pond Road, Stony Point, New York 10980 (the "Real Property") to Yosef Krasnjanski for the sum of $1,275,000, subject to higher and/or better offers

at a public auction sale (the "Public Sale"), free and clear of all liens, claims and encumbrances (collectively, "Liens"), with such Liens, if any, to attach to the proceeds of the sale in the amount and priority as they currently exist; (ii) approving certain procedures for the Public Sale (the "Public Sale Procedures"); (iii) approving the form, time and scope of the notice of the Public Sale (the "Notice Procedures" and, together with the Public Sale Procedures, the "Sale Procedures"); (iv) fixing the date for the hearing to confirm the results of the Public Sale; and (v) granting such other and further relief as may be just and proper, respectfully represents and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. §1 409. The statutory predicates for the relief sought herein are §§ 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

## BACKGROUND

2. On November 17, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court and an Order for Relief was entered. The Debtor remains in possession of his property and is continuing to manage his property and affairs as a debtor-in-possession.

3. The Debtor's chapter 11 filing was precipitated by a pending matrimonial (divorce) action entitled *Julie Spaeth v. Yaakov David Spaeth* (Index No. 030593/2025), which was filed on January 28, 2025. The Debtor and his wife were married on February 4, 1996 in

2

Miami Florida. Prior to the filing of the divorce proceedings, the Debtor and his wife had enjoyed a successful and fairly high style of living. The Debtor was the family's sole source of income and his wife was the proverbial "homemaker" and the caregiver for their five children, three of whom are now emancipated.

4. The Real Property consists of a single family home located at 4 Beaver Pond Court, Stony Point, New York 10980 (Section 14.03, Block 2, Lot 45).

## THE PROPOSED SALE AND RELATED PROCEDURES

5. By this Motion, the Debtor seeks this Court's approval of the Sale Procedures, which are set forth below in detail below, as well as the sale of the Debtor's right title and interest in the Real Property, free and clear of all Liens, if any, subject to higher and/or better offers, and "as is", "where is", and "with all faults", without any warranties, guarantees and/or representations regarding the Real Property to the Successful Bidder (as defined in the Terms of Sale) therefore at the Public Sale.

    A.    **Terms of Sale and Public Sale Procedures**

6. On January 16, 2026, an Order was signed [ECF No. 33], pursuant to §§ 105(a), 327(a) and 330 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, authorizing the Debtor to retain Keller Williams Hudson Valley Realty ("Keller Williams" or the "Broker") as his real estate broker and marketing agent with regard to the intended sale of the Real Property. Pursuant to the efforts of Keller Williams and on February 10, 2026 the Debtor, through Stony Point Holdings, LLC, entered into a Contract of Sale, a copy of which is attached as *Exhibit "B"*, with Yosef Krasnjanski for the sum of $1,275,000 for the Real Property. The prospective purchaser has remitted a good faith deposit of $31,875 (5%),

3

which is currently being held in escrow by the Debtor's counsel pending approval of the proposed sale by this Court and subject to any higher or better bids.

7. The Terms of Sale are the terms that the Debtor (defined in the Terms of Sale as the "Seller") seeks authority to provide to all prospective bidders for the Real Property at a Public (auction) Sale. All parties-in-interest will be advised to read the Terms of Sale in their entirety for a complete description of all of the terms and conditions of the proposed sale process. However, the more salient Terms of Sale are set forth below:

(i) The Public Sale is being conducted pursuant to §§ 363(b), (f) and (m) of the Bankruptcy Code, subject to approval by the Bankruptcy Court, and shall be held live on the Sale Date at the following location (the "Sale Location"):

> Pick & Zabicki LLP
> Attn: Douglas J. Pick, Esq.
> 369 Lexington Avenue, 12th Floor
> New York, NY 10017
> (212) 695-6000

(ii) Telephonic bidding will be made available for pre-registered bidders. Bidding will remain open until there are no higher or better bids made. Further information on how to submit bids will be available by contacting Douglas J. Pick at Pick & Zabicki LLP using the contact information above.

(iii) In order to be permitted to bid on the Real Property, prior to the commencement of the Public Sale, each prospective bidder must deliver to Pick & Zabicki LLP, counsel to the Debtor (the "Attorney"), by wire transfer, certified check or bank check, the sum of $50,000 (the "Qualifying Deposit"), which amount shall serve as a partial good faith deposit against payment of the purchase price, which shall be equal to the successful bid submitted at the Public Sale, by such competing bidder as the Seller determines to have made the highest or best bid for the Real Property (the "Successful Bidder").

(iv) **The Public Sale of the Real Property will be subject to a buyer's premium (the "Buyer's Premium") in the amount of five percent (5%) of the gross sales price of the Real Property. The Buyer's Premium shall be added to the final sale price and payable by the Successful Bidder(s) of the Real Property, and the Estate shall not be responsible to pay any portion of the Buyer's Premium.**

(v)   Within 48 hours after conclusion of the Public Sale, the Successful Bidder shall deliver to Pick & Zabicki LLP, by wire transfer, certified check, or bank check, an amount equal to ten (10%) percent of the Purchase Price, less the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"), plus the Buyer's Premium.

(vi)  The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within forty-eight (48) hours after conclusion of the Public Sale. Failure of the Successful Bidder to tender the ten (10%) percent Deposit of the high bid at auction and the five percent (5%) Buyer's Premium within forty-eight (48) hours after conclusion of the Public Sale shall result in an immediate default under these Terms of Sale and the Memorandum of Sale, and shall result in the forfeiture of all earnest monies paid (including any Qualifying Deposit), including the Buyer's Premium.

(vii) The Successful Bidder and the competing Bidder who the Seller determines to have made the second highest or best bid for the Real Property (the "Second Highest Bidder") must execute, and thereby agree to be bound by (i) these Terms of Sale, and (ii) a Memorandum of Sale. At the conclusion of the Public Sale, the Attorney will return the Qualifying Deposits to all other bidders, except to the Successful Bidder and the Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within seven (7) business days from the date the Attorney receives the full Deposit plus the Buyer's Premium from the Successful Bidder.

(viii) The closing of the transaction contemplated by these Terms of Sale (the "Closing") shall take place at the offices of Pick & Zabicki LLP, attorneys for the Debtor, 369 Lexington Avenue, Suite 1200, New York, New York 10017, commencing at 11:00 a.m. (EST) on a date to be determined or at another location as may be agreed upon. The Closing shall occur within twenty (20) days from the entry of the Sale Order (as defined in ¶ xi, below) (the "Closing Date"). **TIME BEING OF THE ESSENCE as to the Successful Bidder or the second Highest Bidder, as the case may be**, although the Closing Date may be extended solely by the Seller at his option and discretion.

(ix)  The Successful Bidder or the Second Highest Bidder, as the case may be, shall be obligated to close title to the Real Property. There are no contingencies of any kind or nature that will permit the Successful Bidder or the Second Highest Bidder, as the case may be, or any other qualifying bidder, to cancel or avoid their obligation under these Terms of Sale, other than the ability to deliver insurable title. In the event that the Successful Bidder or the Second Highest Bidder, as the case may be, fails to close title to the Real Property for any reason whatsoever, including failure to tender the entire Purchase Price at the Closing, the Successful Bidder shall forfeit (a) the Deposit to the Seller, (b) the Buyer's Premium to the Broker, and (c) the right to obtain title to the Real Property. In the event that (a) the Seller is unable to deliver the Real Property in a manner consistent with these

5

Terms of Sale, or (b) the Court fails to enter the Sale Order (as defined in ¶xi below), the Deposit will not be forfeited, and the Deposit shall be returned to the Successful Bidder or the Second Highest Bidder, as the case may be, promptly, without interest. In the event that the Seller fails to close, it is acknowledged that return of the Deposit and Buyer's Premium are the Seller's only obligation hereunder, and the Successful Bidder and/or the Second Highest Bidder will have no recourse against the Seller, his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate. As stated above, **Time is of the Essence against the Successful Bidder or the Second Highest Bidder, as the case may be.**

(x) The Successful Bidder or the Second Highest Bidder, as the case may be, shall have demonstrated to the sole satisfaction of the Seller, his respective professionals and/or the Court, as the case may be, evidence of its ability to conclude the transaction upon these Terms of Sale, without delay. The Seller reserve the right to reject any offeror, who in the sole discretion of the Seller is not financially capable of consummating the purchase of the Real Property. **Expenses incurred by the Successful Bidder or the Second Highest Bidder, as the case may be, or any other competing bidder concerning any due diligence, such as obtaining title reports and other due diligence information, shall be the sole responsibility of such bidder, and under no circumstances shall the Seller, his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate be responsible for, or pay, such expenses.**

(xi) The Debtor shall seek an order of the Bankruptcy Court (the "Sale Order") prior to the Closing to confirm the result of the Public Sale of the Property to the Successful Bidder and the Second Highest Bidder in the event the Successful Bidder defaults.

(xii) In the event that the Successful Bidder for the Real Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise fails perform any of its obligations under these Terms of Sale, the Seller, at his sole option and discretion, shall be authorized to sell the Real Property to the Second Highest Bidder, without any further notice, and without giving the Second Highest Bidder credit for the Deposit, plus the Buyer's Premium, forfeited by the Successful Bidder, and upon such other terms and conditions as the Seller deems appropriate. Should the Second Highest Bidder fail to close on the Real Property within such time as the parties may agree but not to exceed thirty (30) days after notice from the Seller to the Second Highest Bidder of its obligations to Close, the Seller shall be authorized to sell the Real Property to the next highest or best bidder at the Public Sale, without the necessity of any further notice. All bidders who execute a copy of these Terms of Sale shall be bound to all terms and conditions contained herein.

(xiii) The Real Property is being sold **"AS IS" "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of any and all liens or adverse claims to title, of whatever kind or nature, and subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions.  By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Real Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Real Property in making their bids.  Neither the Seller, nor any of his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate, make any representations or warrantees with respect to the permissible uses of the Real Property.  All bidders acknowledge that they have conducted their own due diligence in connection with the Real Property and are not relying on any information provided by the Seller or his respective professionals.

(xiv) Each bidder hereby expressly agrees and acknowledges that neither the Seller, nor his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate, have made any representations or warranties, nor is such bidder relying on any statements or information provided by the Seller, nor his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate, including, but not limited to any representations, warranties, statements or information as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Property or this Public Sale, which might be pertinent to the purchase of the Real Property, including, without limitation, (i) the current or future real estate or other tax liability, assessment or valuation of the Real Property or transfer thereof; (ii) the potential qualification of the Real Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Real Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (iv) the current or future use of the Real Property; and (v) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof.  The Seller, his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate are not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Real Property, made or furnished by the Seller, his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate or any real estate broker, agent, employee, servant or other person or professional

representing or purporting to represent the Seller unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Seller. **The Real Property shall be delivered vacant of any and all leases and occupancies at the time of closing.**

(xv) Each of bidders who tender a Qualifying Deposit and the Seller will bear their own costs and expenses (including legal fees and expenses) incurred in connection with these Terms of Sale and the transaction contemplated hereby.

(xvi) If the Seller is unable to deliver the Real Property in accordance with these Terms of Sale for any reason whatsoever, his only obligation will be to refund the Deposit and the Buyer's Premium, without interest, to the Successful Bidder or the Second Highest Bidder, as the case may be, and upon such refund, the Successful Bidder or the Second Highest Bidder, as the case may be, will have no claim or recourse against the Seller, his respective professionals, including the Debtor's counsel and the Broker, and/or the Debtor's Estate, and shall have no further rights under these Terms of Sale or Memorandum of Sale.

(xvii) The Seller reserve the right to withdraw the Real Property from the Public Sale, either prior, or subsequent to the Public Sale, for any reason whatsoever, as he deems necessary or appropriate.

(xviii) The Public Sale of the Real Property is subject to confirmation by the Seller and approval of the Bankruptcy Court.

(xix) The Bankruptcy Court shall determine any disputes concerning the Public Sale of the Real Property. By participating in the Public Sale, all bidders consent to the exclusive jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

7. The Debtor respectfully submits that the proposed Public Sale Procedures and Terms of Sale are fair and reasonable under the facts and circumstances of this case.

B. **Notice Procedures**

8. Pursuant to Bankruptcy Rules 2002(a)(2) and 6004(a), creditors are entitled to twenty-one (21) days' notice in connection with a proposed sale "unless the court for cause shown shortens the time or directs another method of giving notice." Bankruptcy Rule 2002(c)(1) governs the content of the notice of proposed sale and requires that notice include,

*inter alia*, the terms and conditions of any sale and the time fixed for objections. A general description of the assets to be sold is also required.

9. The Debtor proposes to serve a notice, substantially in the form attached to the Bidding Procedures Order as *Exhibit "B"* (the "Notice of Sale"), together with the Terms of Sale (in the form approved under the Sale Procedures Order), upon: (i) all known creditors of the Debtor or their counsel if known; (ii) the United States Trustee; (iii) the Department of the Treasury, Internal Revenue Service; (iv) the New York State Dept. of Taxation and Finance; (v) the New York City Dept. of Finance; and (vi) all persons who have filed notices of appearance in the Debtor's case on or prior to the date hereof, by first class mail, within five (5) business-days following the entry of the Sale Procedures Order. The Notice of Sale provides parties with notice of, among other things: (i) the Real Property being offered for sale along with the deposit requirements; (ii) the date and time of the Public Sale; (iii) the location of and the permissible means by which to participate in the Public Sale; (iv) information on how to obtain the Terms of Sale and information relating to the Real Property; (v) the date and time of the Sale Confirmation Hearing and the date and time by which objections to the relief to be sought thereat are due to be filed and served. The Debtor believes that the Notice of Sale provides sufficient information relating to the proposed sale of the Property to permit a party to be fully informed of the nature and terms of the proposed transaction in accordance with Bankruptcy Rule 2002(c)(1).

10. Keller Williams' pre-Public Sale marketing efforts with respect to the Real Property shall consist of, among other things, advertising notice of the Public Sale: (i) on 50 real estate and auction specific web sites, (ii) on Keller Williams' website (www.KW.com), which receives approximately 15,000 page views every month, (iii) in Keller Williams' weekly email

broadcast to 2,500 recipients, and (iv) by contacting known interested parties through prior business dealings.

11. The Debtor respectfully submits that, under the facts and circumstances presented, the proposed Notice Procedures are fair and reasonable and would provide all interested parties with ample information and sufficient time to formulate any bids for the Real Property while also providing all interested parties with adequate notice and opportunity to be heard by this Court with respect to the proposed sale of the Real Property.

### C. Sale Confirmation Hearing

12. The Debtor is requesting that the Court schedule a hearing whereat the Debtor will seek confirmation of the highest and/or best bid(s) received for the Real Property at the Public Sale no later than ten (10) days following the date of the Public Sale (the "Sale Confirmation Hearing"). At the conclusion of the Public Sale and prior to the Sale Confirmation Hearing, the Debtor anticipates supplementing this Motion with evidence supporting a finding that the parties making the highest and/or best offers at the Public Sale acted in good faith and are deserving of the protections of a good faith purchaser under § 363(m) of the Bankruptcy Code and that the Real Property be sold free and clear of all Liens, if any, under § 363(f) of the Bankruptcy Code. The supplemental filings will also include information concerning the marketing efforts with respect to the sale of the Real Property, the number of bidders who register for/qualify to bid at the Public Sale, the number of registered bidders that actually tender bids at the Public Sale and the amount(s) thereof, and the identity of the highest and/or best offeror(s) at the conclusion of the Public Sale, along with other relevant information.

## BASIS FOR RELIEF REQUESTED

### A. The Sale Procedures are Fair and Reasonable and, Thus, Should Be Approved

13. "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold." John J. Jerome & Robert D. Drain, *Bankruptcy Court Is Newest Arena for M&A Action*, N.Y.L.J., June 3, 1991. In furtherance of that goal, sale procedures, such as those proposed in this Motion, may be used in court-supervised asset sales because they streamline the acquisition process, "help to provide an adequate basis by which to compare offers" and, ultimately, maximize value. *See id.*; *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

14. The Debtor respectfully submits that the proposed Sale Procedures are fair and appropriate under the circumstances, are consistent with procedures routinely approved by courts in this District, and are in the best interest of the Debtor, his estate and his creditors. The Debtor believes that, in order to provide maximum value to his creditors, he must promptly move forward with the sale process in an effort to obtain the highest and/or best offers for the Real Property. To that end, the Sale Procedures were designed with the objective of promoting active bidding on a prompt timeline that will hopefully result in the highest or otherwise best offer for the Real Property.

15. Additionally, the Sale Procedures facilitate an orderly yet competitive bidding process that will maximize the net value realized from the sale of the Real Property. In particular, the Sale Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

16. At the same time, the Sale Procedures provide the Debtor with an adequate opportunity to consider competing bids and select the highest or otherwise best offer for the completion of the sale of the Real Property. The Debtor believes that the Terms of Sale will enable the Debtor to obtain the fair market value for the Real Property. Thus, the Debtor believes that the consideration that may be received in exchange for the Real Property will be fair and reasonable, and at or above market. The Debtor therefore respectfully requests this Court's approval of the Sale Procedures.

**B.   The Proposed Sale and Related Terms Should be Approved as a Reasonable Exercise of the Debtor's Sound Business Judgment**

17. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." In order to approve the sale of estate property outside of the ordinary course of business, the bankruptcy judge must "find from the evidence presented before him at the hearing a good reason to grant such an application." *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F. 2d 1063, 1071 (2d Cir. 1983); *see also Stephens Indus. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986) ("[B]ankruptcy court can authorize a sale of all of a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action."). "[T]he standards for allowance of a pre-confirmation sale pursuant to § 363(b)(1) are that the sale proponent must show not only that there is both a 'sound business purpose' why the sale should be allowed to take place outside of the ordinary course…but that the proponent must also make a strong showing that all of the requirements for any § 363(b)(1) sale are met." *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.,* 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987) (citations omitted). "These elements are the provision of accurate and reasonable notice; a showing that the price to be paid is adequate, *i.e.,* fair and reasonable; and establishing

that 'good faith', *i.e.,* the absence of any lucrative deals with insiders, is present." *Id.; see also In re Betty Owens Schools, Inc.*, 1997 U.S. Dist. LEXIS 5877, *11 (S.D.N.Y. 1997) (if the court determines that a substantial business justification exists for the transaction, it must then decide whether: (i) adequate notice has been given to all creditors and parties-in-interest[1]; (ii) the sale contemplates a fair and reasonable price; and (iii) the purchaser is proceeding in good faith).

18.     It is clear that a debtor's showing of a sound business justification need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). The burden of establishing a substantial business purpose for the sale of property of the estate outside the ordinary course of business falls upon the debtor. *Lionel*, 722 F.2d at 1070-71. However, once the debtor articulates a rational business justification, a presumption attaches that the decision was made on an informed basis, in good faith and in the honest belief that the action is in the best interest of the debtor. *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

19.     The Debtor respectfully submits that the proposed sale of the Real Property under the Terms of Sale represents a sound exercise of business judgment by the Debtor.    The Debtor believes that the proposed sale represents the best possible means for the Debtor, his creditors and his estate to recover the value of the Real Property under the circumstances and would also

---

[1] The Debtor is serving the instant Motion, together with a corresponding notice thereof, and, by way of the instant Motion, is seeking authorization to further serve the (approved) Notice of Sale along with copies of the (approved) Terms of Sale upon, upon: (i) all known creditors of the Debtor or their counsel if known; (ii) the United States Trustee; (iii) the Department of the Treasury, Internal Revenue Service; (iv) the New York State Dept. of Taxation and Finance; (v) the New York City Dept. of Finance; and (vi) all persons who have filed notices of appearance in the Debtor's case on or prior to the date hereof, by first class mail. Accordingly, there should be no question that adequate notice of the proposed sale of the Real Property has been/will be given.

further the interests of the Debtor and his creditors in bringing the chapter 11 case to a conclusion.

20. Also, Keller Williams will continue to be extensively marketing the Real Property prior to the Public Sale so as to generate maximum interest from potential bidders. As such, the highest and/or best bid ultimately made for the Real Property will be an accurate reflection of the actual fair market value of the Real Property (*i.e.*, the Real Property is "worth what someone will pay for it" as the saying goes). Furthermore, given the requirement that all potential bidders received and agree to be bound by the same Terms of Sale, there should be no question that the Successful Bidder for the Real Property at the Public Sale will be proceeding in good faith. Thus, the Debtor respectfully requests that the Court approve the proposed sale of the Real Property to the bidder(s) that makes the highest and/or best offer therefor at the Public Sale pursuant to the Terms of Sale.

21. With regard to any encumbrances against property proposed to be sold by a debtor, §363(f) of the Bankruptcy Code provides:

> The [debtor-in-possession] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

14

11 U.S.C. § 363(f); *see In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers to acquire assets without any accompanying liabilities."); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale of the interest concerned may occur if any one of the conditions of 363(f) have been met.").

22. In accordance with the Terms of Sale and § 363(f) of the Bankruptcy Code, the Debtor requests that the sale of the Real Property be free and clear of all Liens, with such Liens to attach to the proceeds of sale in the amount and priority as they currently exist. All parties known to have asserted Liens on the Real Property will be provided notice of the proposed sale of the Real Property and shall be granted an opportunity to object to the relief requested in this Motion. Any such party that does not object to the sale of the Real Property shall be deemed to have consented. *See, e.g., Futuresource LLC v. Reuters, Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) (standing for the proposition that the lack of an objection to a proposed sale is deemed to be a consent to the sale); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to a sale free and clear of liens, claims and encumbrances satisfies Bankruptcy Code § 363(f)(2)); *In re Enron Corp.*, 2003 WL 21755006, at *2 (AJG) (Bankr. S.D.N.Y 2003) (ordering that all parties who did not object to the proposed sale are deemed to have consented to the sale under § 363(f)(2) of the Bankruptcy Code).

23. Alternatively, the Debtor contends that the proposed sale of the Apartment satisfies § 363(f)(5) of the Bankruptcy Code and provides adequate cause for granting authorization to conduct the sale of the Real Property free and clear of Liens. Any party holding

a Lien may be compelled to accept a monetary satisfaction of its Lien. The proposed Sale Order will provide that the Liens on the Real Property shall attach to the proceeds of the sale of the Real Property, subject to: (i) any claims and defenses the Debtor may have with respect thereto, including but not limited to, the Debtor's recovery the reasonable, necessary costs and expenses of preserving, or disposing of, the Real Property under § 506(c) of the Bankruptcy Code. Accordingly, the Debtor submits that § 363(f)(5) of the Bankruptcy Code can be deemed satisfied upon a sale of the Real Proiperty being conducted free and clear of all Liens.

24. Finally, the Debtor requests that this Court find that the Successful Bidder for the Real Property be afforded the protections provided by § 363(m) of the Bankruptcy Code in connection with the proposed sale which provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . .of this section of a sale . . . of property does not affect the validity of a sale. . .under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

25. Although the Bankruptcy Code does not define "good faith purchaser", the Court of Appeals for the Second Circuit has stated that good faith is shown by the integrity of a purchaser's conduct during the course of the sale proceedings. *Licensing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997). 11 U.S.C. 363(m); *See Allstate Ins. co. v. Hughes*, 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363 (m) provides that a good faith transfer of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 1 1 U.S.C. 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.") The Second Circuit has held that a party would have to show fraud or collusion between a purchaser

and the debtor in possession (or trustee) to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."). *See also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

26. Here, the Debtor will demonstrate at or before the Sale Confirmation Hearing that the Successful Bidder is a good faith purchaser. Accordingly, the Debtor will seek that the Court determine that, upon entry into the Terms of Sale, the Successful Bidder acted in good faith and is entitled to the protections of a good faith purchaser under as required by § 363(m) of the Bankruptcy Code.

## CONCLUSION

27. Based upon the foregoing, it is respectfully requested that the Court grant the Motion in its entirety along with such other and further relief as may be just and proper.

Dated: New York, New York
February 16, 2026

**PICK & ZABICKI LLP**
Counsel to the Debtor

By: ___*s/ Douglas Pick*_____
Douglas J. Pick
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000